UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SAVANNAH BREE WAGNER**               **CIVIL ACTION**

**VERSUS**

**GENERAL MOTORS, LLC**                **NO. 24-182-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions of law, and recommendations within fourteen (14) days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on September 30, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

SAVANNAH BREE WAGNER                              CIVIL ACTION

VERSUS

GENERAL MOTORS, LLC                               NO. 24-182-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Now before the Court is General Motors, LLC's ("Defendant") Motion for Summary Judgment (the "MSJ"). (R. Doc. 16). The motion is opposed. (R. Doc. 18). Defendant filed a reply. (R. Doc. 20).

**I.      Background**

On March 5, 2024, Plaintiff filed suit in this Court against Defendant regarding her 2021 GMC Yukon (the "Vehicle"). (R. Doc. 1). Plaintiff brought a Magnuson-Moss Warranty Act (the "MMWA") claim and a redhibition claim against Defendant because Defendant manufactured the Vehicle, and the Vehicle had numerous defects after Plaintiff bought it from Legacy Buick GMC. When Plaintiff filed suit, she was represented by attorney Kevin Reeve Duck. (R. Doc. 1 at 7).

On June 10, 2024, this Court entered a scheduling order. (R. Doc. 13). The schedule order set a deadline for parties to amend pleadings for July 1, 2024, and the deadline for filing all discovery motions and completing all discovery except experts was set for November 4, 2024. The deadline to file dispositive motions was set for April 11, 2025. These deadlines were never continued. Shortly after these deadlines were set, on July 26, 2024, Kevin Reeve Duck filed a motion to withdraw as counsel, and this motion was granted on August 5, 2024. (R. Docs. 14; 15). Plaintiff has proceeded *pro se* since August 5, 2024.

On April 11, 2025, Defendant timely filed the instant MSJ. (R. Doc. 16). Any opposition to the MSJ was due 21 days after it was filed. LR 7(f). One month after the MSJ was filed, on May 12, 2025, Plaintiff filed (i) a motion to compel, (ii) an untimely opposition to the MSJ, and (iii) a motion to amend. (R. Docs. 17; 18; 19). Attached to the motion to amend are documents it appears that Plaintiff intended to attach to her opposition to the MSJ.[1] (R. Docs. 19-2; 19-3; 19-4; 19-5; 19-6). In light of Plaintiff's pro se status, the undersigned will consider her late opposition as well as the aforementioned attachments as part of Plaintiff's opposition to the MSJ.

## II.     Law and Analysis

### A.     Legal Standard

Summary judgment shall be granted when there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Fed. R. Civ. P. 56(c), the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for the purpose of the motion and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment must be entered against a plaintiff if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an essential element, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case . . . renders all facts immaterial." *Id.*, at 323 (quotations omitted).

---

[1] "Pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), Plaintiff submits the following exhibits which support material factual disputes and procedural objections raised in this Verified Response." (R. Doc. 19-1).

3

B.      **Arguments of the Parties**

Defendant moves for summary judgment relying upon the pleadings, a Statement of Material Facts, a declaration by Laurence Braddell, and one exhibit detailing the Vehicle's warranty transaction history. (R. Docs. 16; 16-1; 16-2; 16-3). Defendant argues that Plaintiff's MMWA claim and redhibition claim fail on summary judgment review because the evidence shows that (i) Defendant has honored its warranty obligations and (ii) no identified issues with the Vehicle currently remain. (R. Docs. 16; 16-1). Defendant's Statement of Material Facts notes that the Vehicle had the following repairs performed under Defendant's "limited warranties at ***no cost to Plaintiff***:" (i) a camshaft replacement on October 6, 2023; (ii) an engine replacement on November 6, 2023; (iii) an exhaust muffler and telematic control module replacement on April 23, 2024; and (iv) a belt idler pulley replacement on October 2, 2024. (R. Doc. 16-1). The Statement of Material Facts also notes that "Plaintiff's Complaint does not provide any details beyond the conclusory allegation that there are 'certain defects . . . related to the Vehicle's engine and cooling components and systems.'" *Id.*

Defendant asserts that, because it remedied issues with the Vehicle for free under the warranty, it cannot be held liable under the MMWA. The MMWA simply "'creates a statutory cause of action for consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [imposed by the Act] or [established by] a written warranty, implied warranty, or service contract.' *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 474 (5th Cir. 2002)." (R. Doc. 16-2 at 3). Defendant also argues that it cannot be held liable under Louisiana redhibition law because manufacturers are entitled to repair the unusable or inconvenient product to avoid the redhibition claims. (R. Doc. 16-2 at 4) (citing La. Civ. Code art. 2531).

4

Plaintiff opposes the MSJ by arguing that (i) the MSJ is premature,[2] (ii) the MSJ was not properly served on Plaintiff,[3] and (iii) there are facts that remain in dispute. (R. Doc. 18).

Plaintiff submits that the following alleged facts are in dispute:

1. On or about October 5, 2023, the vehicle experienced lifter failure; by November 5, 2023, the entire engine failed and required full replacement.

2. The vehicle remained out of service for 89 days. During this time, Plaintiff paid more than $3,600 in monthly notes.

3. Plaintiff was issued inadequate loaners for a household with two small children.

4. Post-repair, the vehicle continued to exhibit:
    a. Recurring AC failures after new engine replacement (dealership refused fault-2nd opinion was sought after dealership told us this.)
    b. Transmission symptoms
    c. A cracked rim, denied under warranty, requiring out of pocket replacement of about (~$ 1,200.00 denied bumper to bumper warranty coverage)
    d. Infotainment screens cracked under normal use-a problem not caused by Plaintiff's young children but most likely from outsourcing economical parts.

5. GM discussed a buyback twice — once verbally with GM's executive office, directly with Plaintiff's husband and again, through Plaintiff's former counsel's office in May 2024, where GM requested records related to a repurchase (See Exhibit B and E: Text Message as well as Email Screenshots)

6. Both offers were later retracted by GM and Prior Counsel without explanation. Plaintiff fully cooperated by gathering bank payoff, insurance payment history, and financing records. These facts support an additional breach of contract theory and indicate material disputes of fact.

(R. Doc. 18). Plaintiff also argues that the warranty scope, post-repair defects, and the alleged bad-faith negotiations are still in dispute. Plaintiff further argues that Defendant's April 2025 recall of 187 6.2L V8 engines, used in the 2021-2024 GMC Yukon, supports a denial of the MSJ because the recall reveals that the Vehicle was defective from the start. Plaintiff points out that her engine failure predated the recall and argues Defendant's "issuance of a recall after the commencement of litigation confirms prior knowledge of a latent defect, constitutes fraud by

---

[2] The MSJ is not premature because, as discussed above, the MSJ was filed on the dispositive motion deadline set by the Court. (R. Doc. 13).

[3] This Court finds that the MSJ was properly served on Plaintiff, as shown in the proof of service. (R. Doc. 20-1).

5

omission, and materially supports Plaintiff's claims under both Louisiana Redhibition and the [MMWA]." (R. Doc. 18 at 6). Plaintiff states that because Defendant's failure to disclose the recall in its briefing constitutes "fraudulent concealment[,]" she is reserving the right to seek sanctions. Plaintiff has filed the following exhibits in support of what she calls the disputed facts:

- **Exhibit A:** This exhibit is a Legacy Buick GMC receipt noting the replacement of the Vehicle's camshaft and maintenance of the Vehicle's cooling system from October 6, 2023 to October 31, 2023, and a Legacy Buick GMC receipt noting the replacement of the Vehicle's engine, and other parts, between November 6, 2023 and December 12, 2023. Both receipts noted Plaintiff paid no fees due to a warranty and one noted she was given a 28-day loaner, also free of charge due to a warranty. (R. Doc. 19-2).

- **Exhibit B:** This exhibit is a text message from Plaintiff's prior attorney informing her that a possible repurchase of her Vehicle might be a settlement option, but also noting the following documents were needed from Plaintiff first: "1. Financing agreement from your bank 2. A printout from their insurer for all insurance premiums paid to date 3. A thirty day payoff on the vehicle[.]" (R. Doc. 19-3).

- **Exhibit C:** This exhibit is an AI summary of the vehicles recalled by Defendant's recent recall, although the date of the recall does not appear. (R. Doc. 19-4).

- **Exhibit D:** This exhibit includes two screenshots of what appears to be Plaintiff's online loan account portal for the Vehicle, showing that she owes over $1 thousand dollars a month and that the principal balance is $22,655.60 dollars. (R. Doc. 19-5).

- **Exhibit E:** This exhibit is a screenshot of an email to Plaintiff from Daryl Mansueto, dated May 21, 2024, wherein he notifies Plaintiff that the Vehicle's repurchase is one of the settlement options, but that he needed the following records from Plaintiff: "1. Financing agreement from your bank 2. a printout from their insurer for all insurance premiums paid to date 3. a thirty day payoff on the vehicle[.]" (R. Doc. 19-6).

In response to Plaintiff's opposition to the MSJ, Defendant—likely due to Plaintiff attaching the above to her Motion to Amend and not to her opposition—argued Plaintiff did not file an opposing statement of material facts, offered no proof of a genuine issue or an essential element of her case, and "identified no evidence of any kind." (R. Doc. 20 at 1). Based on this, Defendant asserted that (i) it is clear from the evidence and undisputed facts filed by Defendant that Defendant honored the applicable warranties, and (ii) Plaintiff has pointed to no evidence that the Vehicle is currently defective.

6

### C. Plaintiff's Failure to Submit Her Own Statement of Material Facts

In opposing a motion for summary judgment, a party is required under LR 56(b) to:

> submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation[.] . . . The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

As Plaintiff failed to comply with this rule, Defendant is correct that the Court must deem admitted their record-supported statements of undisputed fact. Rule 56(f) provides:

> Facts contained in a . . . statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. . . . The court may disregard any statement of fact not supported by a specific citation to record material[.] The court shall have no independent duty to search or consider any part of the record not specifically referenced[.]

"However, according to Fifth Circuit jurisprudence, in such instances the Court can still consider record evidence to determine if there is a factual dispute." *Lewis v. M7 Prods., LLC*, 427 F. Supp. 3d 705, 717 (M.D. La. 2019) (citation omitted). Plaintiff has submitted certain evidence, namely Exhibits A through E. This Court finds the evidence presented in Plaintiff's Exhibit B, Exhibit D, and Exhibit E is not material to the claims Plaintiff has brought in her complaint. *See Anderson*, 477 U.S. at 247-48 (emphasis in original) (Since Fed. R. Civ. P. 56 requires that there be no "*genuine* issue of *material* fact" to succeed on a motion for summary judgment, "the mere existence of *some* alleged factual dispute" cannot defeat a motion for summary judgment.); (R. Docs. 19-3; 19-5; 19-6).

Yet, Exhibits A and C are relevant to Plaintiff's claims. (R. Docs. 19-2; 19-4). Exhibit A confirms Defendant's factual assertions as it records the replacement of the engine and the camshaft. (R. Doc. 19-2). Exhibit C provides notice that vehicles of the same type as the Vehicle

7

were subject to a recall by Defendant. (R. Doc. 19-4). This Court takes judicial notice that on April 24, 2025, Defendant "decided that a defect which relates to motor vehicle safety may exist in certain 2021 – 2024 model year . . . GMC . . . Yukon . . . equipped with the 6.2L V8 gas engine (RPO L87)[, because t]he connecting rod and/or crankshaft engine components in these vehicles may have manufacturing defects that can lead to engine damage and engine failure." Part 573 Safety Recall Report, NHTSA Recall No. 25V274, Manufacturer Recall No. N252494000; *See Segura v. Gen. Motors LLC,* No. DR-14-CV-077-AM-VRG, 2015 WL 13805701, at *7 (W.D. Tex. July 29, 2015), *report and recommendation adopted,* No. DR:14-CV-0077-AM/VRG, 2015 WL 13805702 (W.D. Tex. Sept. 30, 2015) ("[T]he District Court may take judicial notice of the recall information referenced in the parties' briefing and found on the NHTSA's website and consider it in a summary inquiry."). This recall is relevant to the determination of whether a defect was present in the Vehicle when it was sold to Plaintiff.

### D. The Undisputed Material Facts

1. On or about November 23, 2021, Plaintiff purchased a 2021 GMC Yukon from non-party Legacy Buick GMC.

2. The Vehicle was covered by a 3-year/36,000 mile bumper-to-bumper limited warranty, and a 5-year/60,000 mile powertrain limited warranty.

3. The following Vehicle part replacements, among others, were made at no cost to Plaintiff:

    a. October 6, 2023 to October 31, 2023 (39,886 miles) camshaft replaced

    b. November 6, 2023 to December 12, 2023 (40,792 miles) engine, radiator, oil cooler lines, battery, distribution block replaced

    c. April 23, 2024 (48,485 miles) exhaust muffler/telematic control module replaced

    d. October 2, 2024 (57,045 miles) belt idler pulley replaced

4. As of October of 2024, Plaintiff had driven the Vehicle more than 57,000 miles.

### E. The Magnuson-Moss Act Claim

"[T]he MMWA creates a statutory cause of action for consumers 'damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [imposed by the

Act] or [established by] a written warranty, implied warranty, or service contract.'" *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 474 (5th Cir. 2002) (citing 15 U.S.C. § 2310(d)(1)) (alterations in original). The Act defines the term "implied warranty" according to state law.[4] *See* 15 U.S.C. § 2301(7). It defines the term "express warranty" to mean:

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

*Id.,* at § 2301(6)(A)-(B). "The question [is] whether Plaintiffs have sufficiently identified an express warranty and pled facts that would support finding breach of said warranty." *Cassidy v. Ford Motor Co.,* No. CV 15-2483, 2016 WL 687621, at *5 (E.D. La. Feb. 19, 2016).

This Court finds that at least two express warranties have been identified that apply to the Vehicle in this case. The question thus remains whether Plaintiff has provided evidence that these warranties were breached. This Court finds it is apparent that Plaintiff's Vehicle was successfully repaired by non-party Legacy Buick GMC at least four times at no charge, pursuant to the warranties applicable at the time of the repairs. (R. Docs. 16-3; 19-2). While Plaintiff states the Vehicle has suffered regular air conditioning failures, transmission symptoms, a cracked rim, and cracked infotainment screens, Plaintiff only *alleges* that Defendant denied warranty coverage on the cracked rim and provides no documented proof in support. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting

---

[4] In Louisiana, implied warranty claims are brought as redhibitory claims, a claim of Plaintiff's addressed below.

*Anderson*, 477 U.S. at 249, 106 S. Ct. 2505) (citation omitted) ("Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any significant probative evidence tending to support the complaint.'"); *see also Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008) ("[C]onclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.); *see also Healix Infusion Therapy, Inc. v. Helix Health, LLC,* 737 F. Supp. 2d 648, 654 (S.D. Tex. 2010) (citation omitted) ("The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence.").

There is simply no evidence that Defendant breached its express warranties. *See Healix*, 737 F. Supp. 2d at 654 (citation omitted) ("In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts."). Thus, this Court finds Plaintiff's MMWA claim fails with regard to the express warranties.

  **F. The Redhibition Claim**

Defendant argues Plaintiff's redhibition claim fails because (i) manufacturers are entitled to repair the relevant product to avoid redhibition claims, (ii) Legacy Buick GMC cured the defects, and (iii) Plaintiff provides no evidentiary support of any defect following the last repair.

Under Louisiana law, "a buyer may bring a redhibition claim against all sellers in the chain of sales back to the primary manufacturer regardless of the buyer's privity with an upstream party." *Deloach Spray Foam Insulation, LLC v. Briggs & Stratton, Corp.,* 645 F. Supp. 3d 563, 574-75 (W.D. La. 2022) (citation omitted); *see Sw. Louisiana Hosp Ass'n v. BASF Const. Chemicals, LLC*, 947 F. Supp. 2d 661, 683 (W.D. La. 2013), *amended* (Sept. 6, 2013) ("[I]t is clear that [a plaintiff] may pursue a direct cause of action [for redhibition] against the

10

manufacturer [of a component part].”). Under La. Civ. Code art. 2531, a buyer's obligation to tender their property for repair only extends to the "seller who knew not the vices of the thing." Yet, Plaintiff was not required to bring the Vehicle directly to Defendant, as the manufacturer, for repair, because a manufacturer of an allegedly defective product "is deemed to know that the thing he sells has a redhibitory defect[.]" La. Civ. Code. art. 2545; *See Dickerson v. Begnaud Motors, Inc.,* 446 So. 2d 536, 540 (La. Ct. App.), *writ denied,* 449 So. 2d 1349 (La. 1984) ("Article 2545 provides no corresponding right of repair, as found in Article 2531, governing the liability of the good faith seller. Tender and opportunity to repair is unnecessary as a prerequisite to a redhibition action against a manufacturer."). Accordingly, Defendant's argument that it is entitled to repair the Vehicle does not mandate summary judgment as to the redhibition claim.

"In a suit for redhibition, the plaintiff must prove: (1) the seller sold the thing to him and it is either absolutely useless for its intended purpose or its use is so inconvenient or imperfect that, judged by the reasonable person standard, had he known of the defect, he would never have purchased it; (2) the thing contained a non-apparent defect at the time of sale; and (3) the seller was given an opportunity to repair the defect." *See Johnson v. CHL Enters.*, 115 F. Supp. 2d 723, 728 (W.D. La. 2000) (citations omitted). "Proof of a redhibitory defect may be by direct or circumstantial evidence which gives rise to a reasonable inference that the defect existed." *Id* (citations omitted). "The evidentiary burden is that the proof must be more probable than not. The buyer need not prove the underlying cause of the defect, only that it existed." *Id.* "If the circumstantial evidence excludes other reasonable hypotheses with a fair amount of certainty, [the plaintiff] has borne his burden of proof" *Custom Metal & Air Conditioning Co. v. Boudreaux,* 346 So. 2d 1379, 1380 (La. App. 3 Cir. 1977).

Defendant contends Plaintiff's redhibition claim fails in this case because repairs were actually made, and it is not clear any redhibitory defect still exists now. As set forth above, this

11

Court agrees that certain warranty repairs have occurred, and that Plaintiff fails to provide any summary judgment type evidence that redhibitory defects exist now. This does not mean, however, that Plaintiff's redhibition claim fails as a matter of law.

"[A]ssuming that redhibitory defects . . . exist, **attempts at repair, whether successful or not, are immaterial** in regard to the manufacturer. The essence of an action in redhibition, at least as to a manufacturer, is to have the sale rescinded, not to merely have defects remedied. . . . Otherwise, rescission could be avoided altogether by continually repairing the vehicle no matter how major or numerous the defects." *Dreher v. Hood Motor Co.,* 492 So. 2d 132, 135-36 (La. Ct. App. 1986) (citations omitted). Consequently, the central issue in Plaintiff's redhibition claim is whether or not the apparent, albeit repaired, defects in the Vehicle entitles plaintiff to rescind the sale or reduce the price of the Vehicle without regard to repair attempts. While this Court acknowledges that Plaintiff's recovery in this case may be negligible, Defendant has not shown Plaintiff's claim may be dismissed at this juncture. *See Blair v. Bad Boy Inc.,* 48,953 (La. App. 2 Cir. 4/9/14), 137 So. 3d 1223, 1227 ("Multiple defects can collectively form the basis of a redhibitory action even though many of the defects are minor **or have been repaired**."); *compare Dickerson,* 446 So. 2d at 541 (when vehicle was repaired for free, plaintiff was provided a temporary vehicle during the repair, and the defect no longer existed at the time of trial, judge awarded no price reduction or rescission).

Further, Plaintiff has revealed a relevant recall, yet Defendant's exhibit filed in support of its MSJ mentions only the following recalls: (1) "Daytime Running Lights (DRL) May Not Deactivate When Headlamps Are On" and (2) "Third Row Seatbelt Buckle Retention[.]" (R. Doc. 16-3 at 3). This Court thus finds there is a genuine issue of material fact regarding whether a recall applies to the Vehicle and therefore whether the alleged defects existed at the time the Defendant manufactured the vehicle. As a result, this Court finds that Defendant fails to show

12

Plaintiff's redhibition fails on summary judgment. Plaintiff has provided evidence that she was sold the Vehicle, that the Vehicle experienced multiple significant defects, and that she would not have purchased the vehicle has she known of the defects. Further, Plaintiff has provided evidence that the defect existed at the time of the purchase of the Vehicle. This Court cannot therefore grant Defendant's MSJ with regard to Plaintiff's redhibition claim.

### III.   Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that the MSJ (R. Doc. 16) be **GRANTED IN PART** and **DENIED IN PART**, with Plaintiff's MMWA claim being **DISMISSED WITH PREJUDICE**, but Plaintiff's redhibition claim remaining.

Signed in Baton Rouge, Louisiana, on September 30, 2025.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**